Nicholson, C. J.,
delivered the opinion of the court.
This bill is filed by Mrs. Cynthia Ef. Brown as ■executrix of the late Aaron V. Brown, and also as legatee and devisee under his will, together with other devisees and legatees, against W. B. Dortch, as a co-executor of said will, and said Dortch and wife and others as legatees and devisees interested in the estate of said testator.
Aaron V. Brown died in March, 1859, while living in Washington City, in the performance of his duties as Postmaster General, leaving a large and valuable estate in Tennessee, Mississippi, and Arkansas, consisting of valuable farms, and slaves, and personal property on said farms.
By the second item of his original will, he provided as follows:
“I desire that all my estate, real and personal, *742 and wherever situated, and however divided, be equally divided between my wife, Cynthia, and my children by my present and former marriage, share and share ■dike.”
Then follow, in the same clause, some additional special bequests of negroes and other property to his-wife, with other directions that need not be noticed.
By the fifth item of the will, he directed his farming operations to be continued, and his estate to be-kept together undivided (after his wife’s interest should have been separated) until one of his children should become of age or marry, when his or her portion should be set off and allotted from the general estate: and thus on, as they should severally arrive at age- or marry, uutil all should have received their portions.
The will from which these items are taken was dated February 1, 1846. On the next morning he added, below his signature, this clause:
“In case any of my children should die before coming of lawful age or marrying, my desire is that his or her portion shall be divided between my surviving children of both marriages, share and share alike.”
By a codicil, dated March 4, 1847, he provides, that all the property, real and personal, devised to his daughters shall be held and enjoyed by them for their sole and separate use, free from all marital rights, for and during their natural lives, and at their deaths go to their children, respectively, who may be alive at the time of the deaths of their mothers, and *743 to the children of any child that may have died, “such children being so alive at the death of my daughter.”
In 1855, two of his daughters having then, married, he added, among other things, by a codicil;
“My daughters Laura and Medora having married, I have given them the negroes mentioned in their respective deeds of gift.”
Also, that he had given Laura (who had married Flavius J. Robertson), at different times, $4,000; - and Medora, who had married W. B. Dortch, |2,000, and’ that he desired that $2,000 more be paid Mrs. Dortch at an early day, so as to make the two sisters equal up to that time.
He then adds, “all of which must be estimated,, of course, in the future distribution of my estate.”
The testator left five children at his death, two-daughters and three sons, four of whom were by his' first wife, and one, Granville P. Brown, by his last wdfe.
The two youngest sons, Aaron and Granville P.,. were minors at the filing of this bill, October 6, 1861; the other son, Charles Walter Brown, coming of age shortly after the death of the father.
Granville P. Brown died in April, 1862, a minor- and unmarried, and the suit was revived as to him in the name of Mrs. Cynthia H. Brown, his mother, as his administratrix.
Complainant Cynthia H. Brown and defendant W. B. Dortch proved the will .and entered on their duties as executrix and executor, the latter, as the bill *744 states, “being the active executor and doing the principal part of the business.”
The estate was found to be very largely indebted, and it was apparent that a considerable amount of property would have to be sold to pay these debts.
By agreement of the parties, it was determined best to sell the valuable tract of land in Lowndes County, Mississippi, together with stock and farming implements, for this purpose. Accordingly, in January, 1860, Dortch went to Mississippi and took the proper steps to have such sale made, which was effected on most advantageous terms, as shown clearly by this record, the land bringing upwards of $103,000, and the stock, farming implements, &c., some six or eight thousand dollars.
It is proper to state that Mrs. Brown employed an attorney and agent, who went to Mississippi and assisted in the business of making this sale.
The negroes on this place were then removed to the farm in Phillips County, Arkansas.
It was then found impossible to employ the slaves profitably on this farm in connection with thovse already on the place; and so, after consultation with friends and relations of the minors, it was agreed that this property in Arkansas should be divided by commissioners selected by the parties, the minors being represented, respectively, by their relations; to-wit, Aaron V. Brown, Jr., by his brother-in-law, Flavius J. ■'Robertson, and Granville P. Brown by his uncle, Gideon J. Pillow, who also represented the interest of Mrs. Brown.
*745 This agreement of the parties was reduced to writing, in 'which it was stipulated, among other things, that some of the parties should get the lands, and others should get none, but the shares of those who got less land, or none, should be made equal out of the cash means of the estate, and drafts should he given running to maturity for such amounts; and in the event the moneyed means of the estate should be insufficient to equalize the shares of the several interests, it was provided that “those heirs whose shares are in excess shall pay in money to the others, so as to make all' the shares equal, when the facts shall be properly ascertained.”
Dortch and wife and C. W. Brown, by this agreement, got no land, and consequently were to be made equal out of the other means or property of the estate, as above recited.'
This agreement, so far as the partition and division of this part of the estate were concerned, seems to have been strictly carried out, and the estate divided by the parties selected, to the satisfaction of all parties at the time.
In this division, however,'it appears that the shares of Mrs. Brown and Granville P. Brown, for whom she expected to be guardian, were, at her request, “allotted to them jointly, for the purpose of enabling them to have their business of planting carried on more advantageously for both of . them and with less trouble.”
The lands allotted to these two jointly were valued at $56,000, the two shares of negroes combined, to *746 use the language of the commissioners, were of the value of $44,850. An amount of chattle property,, consisting of mules, farming utensils, &c., amounting to nearly $4,000, was also • allotted to the parties jointly.
In October, 1860, the parties filed a bill on the equity side of the Circuit Court of Phillips County, Arkansas, for the purpose of having a confirmation of this division of the property of the estate in Arkansas. In this bill the foregoing facts are recited, and it is shown that it was manifestly to the interest of the parties that the division should be confirmed by the court. In all the statements of the bill it clearly appears that its entire scope and purpose were to show that the partition made was fair, just and proper; that the interest of the minors bad been watched over by competent friends, and, to use the language of the bill, “t hat said division was made in strict accordance with the terms and provisions of the will of Aaron V. Brown.”
The prayer of the bill is for a division of the estate and a confirmation of the report of the commissioners, in the same manner as if they were acting under the authority of the court, and then that the division and distribution of the property,, so made by the commissioners, ' should vest in the respective heirs to which the same were allotted, an absolute and indefeasible title' to the property therein specified, subject, however, to the condition that if any one had received more than his proportion of the property, to be ascertained on final settlement, the same was to *747 be made equal by paying or accounting for the difference.
It is conceded in the pleadings that a decree was made confirming this division of the Arkansas property, in accordance with the purpose of the above recited bill, though the decree was not filed with the transcript in the record of said proceedings, ■ nor does it appear to have been marked filed at all. We find the decree in another place in the record, nothing being on it, however, to show that it is a part of this case.
Granville P. Brown having died during the pen-dency of this suit, the question is presented, and urged in argument, whether the portion of the estate received by him goes under the executory limitation contained in his father’s will, providing that “in case any of my children should die before coming of age, or marrying, my desire is that his or her portion shall be divided between my surviving children of both marriages, share and share alike”; or whether, by virtue of the decree in Arkansas, this limitation was defeated and set aside, and he took, under that decree, an absolute estate in the property divided, freed from the limitation which went by descent h> his heirs as to realty, or under the statute of distribution as to personalty.
After careful examination we cannot see, under the frame of the original bill,' how this question is raised at all. In fact, that bill is not drawn in view of this question,, its object being simply to have a confirmation by the courts of Tennessee of the sale of *748 the lands in Mississippi, or the acts of the representatives in making said sale; also, of the partition and division made by the commissioners in Arkansas; and to have an account taken, and a settlement of the entire estate, both between the devisees and legatees and the executrix and executor, and between the two personal representatives, Mrs. Brown and Mr. Dortch, a collation of advancements made to adults, and a division of the balance of the estate in Tennessee remaining undivided, with an ascertainment and allowance of proper compensation to the executor and executrix for their services.
Under this bill, the question, what is the effect of the division in Arkansas, or whether its purpose and effect were to free the property so set apart to the parties from the executory limitation contained in the codicils, is not raised. Nor was it intended to be raised, as is evident, not only from the frame of the bill, but from the fact that Granville P. Brown was alive at the time it was filed, and the contingency on which the limitation was to come into operation had not arisen, and was not expected to arise, either in his case, or perhaps in the case of the other parties to whom it applied. At any rate, it is certain no such question is made, or can fairly be deduced from the original bill, as one of the issues involved in the case.
But what is known in the record as a supplemental bill was presented to the Chancellor at • the April term, 1868, after the report of the clerk and master had been made, and exceptions had been filed *749 to it, in wbieb this question is supposed to be presented, by a prayer for a construction of the clause of the will containing the limitations, together with the other relief therein prayed.
We have carefully examined this annexed or supplemental bill also, but cannot find that' the question of the construction and effect of the Arkansas partition and division on the limitations contaiued in the clauses of the will of Aaron Y. Brown which we have cited is put in issue, or raised by the complainants.
On this subject, that is, what estate Granville P. Brown took in the property assigned him in Arkansas, the only question presented is in statements substantially as follow:
After giving the clause of the will and the codicil bearing on the question, the question is submitted to the court, that, in the event the court shall be of opinion that, under the proper construction of the testator’s will, he took a vested interest in what was given or devised to him, he has left no other estate, real or personal, except his one-half of the lands so allotted to him; but in the event the court should think he did not take a vested interest, then he has left no estate.
The prayer of the bill on this subject is, that the proper construction of the will as to said Granville P. Brown, and his rights under the same, may, by the decree of the court, be declared and settled, and that his administratrix be protected in regard • to her *750 rights and interest in respect to him and his estate or property.
It needs no argument to show that the only matter presented here for adjudication is the construction o 1 the will, and a declaration of the rights of Granville P. Brown under the same, by a decision of the question as to whether he did or did not take a vested interest under the will in the property given him. No view of the effect of the Arkansas decree is presented, nor is any opinion of the court asked on the subject.
We need but say that the construction of the will on this subject is too clear to admit of doubt, and that he took a fee simple estate in the real property, and an absolute one in the personal property, that is the negroes, subject to be defeated on the happening of the contingency, or rather subject to the executory limitation over; and that on his death before coming ■of age or marrying, the property went to the surviving children of both marriages, share and share alike, by the plain language of the will.
The contingency has happened; he has died under age and unmarried, and his estate terminated, by the terms of the will, by this event.
In this view of the case, the question is not presented, as we have said, which has been debated before us, as to the effect of the Arkansas partition on this limitation, and we need not discuss it, or in any way decide it. It would be to decide a question not before us.
The next question to which we give our attention *751 is, whether the Chancellor decreed properly in holding that Mrs. Dortch and Mrs. Robertson should be charged only with the value of the life estate under the will in the collation of advancements made to them, or whether the charge should have been of the full value of the property received by them.
As to the property given to the daughters in the lifetime of the testator, the clause of the codicil must be construed in order to arrive at what was his purpose and intention in this matter. That intention must prevail.
After stating the fact that he had given to his daughters the negroes mentioned in ' their respective deeds of gift, and that he had given them and their husbands certain sums of money, he concludes by saying, “all of which must be estimated, of course, in the future distribution of my estate”; that is, must be accounted for.
When we take into consideration the fact that by the whole will it is apparent that the testator intended and felt that he was making an equal distribution of his property among his children, by the disposition made to each, and that in this clause, as well as in the body of his will, he had them alone in his mind, we can but conclude that his intention in the above was to charge the daughters with that property as so much received from his estate, or as so much that went to their families, they representing each the entire family.
The fact that, after their deaths, the deeds of gift provided that it should go to their children, as repre- *752 sen ting their respective parents, was not considered by him, we think, as limiting the amount received by the mother.
We think that a contrary construction of the will would do violence to the intention of the testator, and that that intention should prevail.
In other words, the purpose was to make the whole property a part of the share received by the daughters, and that it should so be accounted for or estimated. If only the life estate was intended to be charged against them, it would have been easy to say so; and no doubt this would have been done.
The same view must be taken as to the property given to the daughters for life by the will, and limited by the codicil to their sole and separate use during life, and after their deaths to their children.
We think that this alone can carry out the intention of the testator as to equality in the distribution of his property to the objects of his bounty. That his wife and children were these objects, and that he was dividing his estate among them; and the further limitation to the children was not looked to by him, nor intended to have any bearing on the amount of property to be allotted to his own children.
Any other view, in a case like the present, would reduce the shares of the other children in order to make the recipients of the testator equal to them, and at the. same time leave the remainder interest to the grandchildren not estimated or accounted for at all, thus creating a gross inequality in the amount of property received by the one class of his children and *753 their families, as compared with what was received by the other.
The limitation over was probably intended simply to secure the slaves and other property to his descendants, to the exclusion of the husbands, and prevent them from disposing of the same so as to defeat this purpose.
"We are pointed to the case of Cawthorn v. Coppedge, 1 Swan, 487, which is cited for 'a different view of the law. That was a case of advancement in the lifetime of the parent, in which the gift was to the children of the daughter, and a reservation of the slaves for life to the daughter, to aid in raising and educating the grandchildren. It was held that this was not an advancement of a life estate to the daughter for which she was chargeable. This was 'the only question in judgment before the court.
It is true Judge McKinney says, in the conclusion of the opinion, that if there had been a gift of a life estate, the daughter would only be chargeable with its value at the time of the gift; but this point, as. we have said, was not in judgment in the case.
We are satisfied that to carry out the true intent of the testator in this case upon a construction of the will, that the property given the daughters, and after their death to their children, was designed to be taken as a share of property, and the other children simply to have a like share, and in this division each child was to be equal, and the bulk of the property to be divided among them. And further, *754 that any other construction would do violence to the purpose of the testator in his will.
We confine ourselves in this- question strictly to the case before us, of a wilí where the gift is to the mother and her children after her, and to the intention of the testator, as we gather that intention from the whole scope of the will.
In reference to the case in 1 Swan, it is proper to say that we have examined the case referred to as authority for the proposition that the value of the life estate is alone to be taken into computation in a collation of advancements; to-wit, the case of Osgood v. The Heirs of Breed, 17 Pick., 354, and also, the case of Jones v. Mason, 5 Hand., 577, and we find that neither of them refers to the question at all.
The first decides only that interest is not to be charged on an advancement made by a parent in his lifetime to his child; and the other, the question whether a legacy given to a child is satisfied by a subsequent advancement made to that child, of the same or a greater amount.
However, we do not decide anything on this question in this case further than that the intention of the testator, as gathered from the scope and tenor of the will, was as we have held.
The next question we dispose of is that of the compensation of the executor, Dortch, and the executrix, Mrs. Brown.
That of the former is about $9,899.40 being 7J per cent on the amount collected by him. We can *755 see no. ground on which to disturb the allowance made by the clerk and master.
We see from the record that the executor has had the burden and responsibility of the business of this large estate, which was greatly involved in debt. In addition, it is charged in the original bill that he has been the active executor, and has done the principal part of the business of the estate.
This allegation is made here for the purpose of charging him with the liability incurred by his having handled the larger part of the assets, and he is entitled to the benefit of it when we look to' the question of his compensation. Beside, we find the testimony of witnesses deemed unexceptionable as to the proper allowance for his services, and the clerk has followed and adopted their estimate. We think he was correct in this, and cannot disturb the result arrived at.
Mrs. Brown is allowed at the same rate for assets collected by her, and we think properly. This compensation should be fixed on the gross amount received, and with which she stood charged, and deducted as a credit at the time of the settlement, by the clerk and master.
As to the question of compensation to McEwen, the agent of Mrs. Brown for going to Mississippi and superintending the sale, we think ' such compensation as was paid, or as may be due, Mrs. Brown being now liable therefor, should be allowed as a proper expense incurred, and on presentation of a voucher showing such payment, or upon her showing that she *756 ■has assumed it individually, and is now liable for it to said McEwen, as an existing debt against herself, it should be allowed her.
A reference can be had as to this matter.
The next question we notice is, an exception based ,on the action of the Chancellor in collating the advancements made to the children in the lifetime of the testator, in favor of the widow.
While the law is well settled, that such advancements are not to be collated in favor of the widow in cases of intestacy, and, if the will does not show a different purpose, it would be equally clear that, speaking from the death of the testator, and disposing of.the property owned by him at his death, the simple requirement of equality, share and share alike, among his devisees and legatees, would not. entitle the widow to more than equality in the property left at his death, yet if a contrary purpose is fairly to be gathered from the will itself, that intent is to be carried out.
Is such a purpose fairly and clearly to be made out from the language of this will taken altogether?
The second item provides for an equal division of all his estate between his wife and his children of both marriages, giving, over and above such child’s part, to his wife, seven negroes, designated by name, and their increase, together with his household and kitchen furniture, plate, carriage and horses, and two other horses.
This can refer only to the property owned by him at his death.
*757 Id tbe codicil of 1855, after referring to the gifts made to his two daughters who had married, of ne-groes, and also of $4,000 to one and $2,000 to the other, and providing that $2,000 more should be added to the share of the latter in mpney, to make the two sisters equal up to that time, he adds, “all of which must be estimated, of course, in the future distribution of my estate.”
We think it clear that the testator had in view, in this codicil, the question of equalization of his daughters and other children, and did not refer to his widow in this connection. He is speaking of his children alone, and providing for an equalization of their advancements, and an account as between them in the final distribution of his estate.
This is strengthened by the fact that, in the second item, he had given to his wife the seven negroes and other property; at any rate, we think we have given the fair meaning of his language and arrived at his real intent, in holding the wife not included in this provision; and this is in accord with what is the settled law in such cases.
It is insisted by the respondents that the Chancellor erred in charging Mrs. Brown with only one-half of the value of the chattle property assigned to her and her son, Granville P. Brown, by the Arkansas commissioners.
This property was assigned to them jointly.
By the report of the commissioners, this property was valued at about $4,000, including interest, and put down as part of the gross amount received by *758 the mother and son, making $104,870 received by them. This report shows also that this amount, or rather the actual amount received, which was $3,834, and interest on $3,108 for twelve months, at six per cent, made the $4,000, or thereabout.
The agreement provided, as to this chattle property, that it should be divided among such heirs as might desire to take it, the said heirs, respectively, giving their drafts on their merchants at twelve months date for the same, which drafts would then constitute, or become, part of the moneyed means of the estate.
This seems not to have been done by Mrs. Brown or any one representing Granville P. Brown.
We think that Mrs. Brown is responsible for only one-half of this property.
Upon a fair construction of the agreement, she does not bind herself to pay for the share of Gran-ville P. Brown. He got it, and has failed to pay for it as was agreed, but. his share of the estate must be charged with it, and thus the matter of the agreement be enforced.
Mrs. Brown, as executrix, was no more bound to have collected this money than was Mr. Dortch, the executor.
Can the presumption be any stronger that she did so, than that he did?
Without further argument, we think that she should not be charged with the half received by Granville P. Brown of this property; but his share is chargeable with it, with interest, in the general division of the property of the estate.
*759 The only other matter of exception .we deem proper to notice is, that the Chancellor disallowed vouchers presented for payment made in Washington City for house rent, and perhaps doctor’s bills.
These vouchers being receipts only, would not of themselves be sufficient, but we have a letter from J. B. McEwen in the record, which he swears contains an agreement between him as agent of Mrs. Brown, and Mr. Dortch, in which Dortch is shown to have admitted the correctness of these vouchers, and that they were properly verified. In addition, we have the testimony of Miss Saunders that furniture was ■ sold in Washington to pay debts to the amount of between $2,000 and $3,000.
We think that, upon this evidence, ^there being nothing contradicting it, thebe vouchers should be allowed as to all debts of date previous to the death of Gov. Brown.
The next and last matter for decision is, the questions raised on the supplem'ental or amended bill.
This was demurred to by the defendants specially, and the demurrer overruled.
We will notice two leading features of this bill briefly, and will dispose of the balance in general terms.
The first point raised is, that Mrs. Brown claims that there was considerable indebtedness due her from Granville P. Brown for debts contracted in carrying on the farming operations jointly t in the State of Arkansas, some of which she has paid and is liable for the rest; and she seeks to have these debts *760 set off against .a judgment which Dortch and the other devisees of Aaron V. Brown, Sr., had obtained against her in a partition suit in Arkansas, in which the lands of Granville P. Brown seem to have been divided, she having been made a party to this proceeding by publication only.
We do not deem it necessary to discuss the various questions argued before us on this branch of the ease, as it is clear that the question of Granville' P. Brown’s indebtedness to Mrs. Brown arising out of their joint farming operations has no connection whatever with the settlement or adjustment of the estate of Aaron V. Brown, Sr., nor can the question of an equitable set-off as between her and W. B. Dortch, or J:he other devisees, growing out of such indebtedness, as against the judgment for rents of the land after the death of Granville P. Brown, be in any way a proper matter of investigation in the original suit. •
As 'we have held in a ‘former part of this opinion, under the will of A. V. Brown, Sr., Granville’s estate in the property given him under the will, terminated at once on his death under age and unmarried, so that under the will he had nothing to transmit to his heirs, or to go to his personal representative, so far as the property derived from his father under the will was concerned. This being so, no debt of his could be a proper set-off or charge against the estate of Granville P. Brown, by reason sf their having become entitled to it. It went to them by virtue of the executory limitation in the *761 will, and as devisees or legatees, and not by descent or as distributees of said Granville P. Brown.
The other matter we notice is, the allegation that there was an agreement entered into between Dortch, through McEwen, that all the moneys received by him alter that time should be deposited in bank at JSTashville to the joint credit of Mrs. Brown and Dortch, as representatives of the estate, and that this was not done; and it is insisted that this failure, on his part was on purpose, in order to increase his compensation.
We do not see how the complainant could obtain any relief on this ground, even if the fact were shown to be as stated, so far as the purpose is concerned.
If she did not pay out the money, or have it •charged to her, she had neither trouble nor responsibility connected with it, and therefore cannot claim compensation for what she never did.
In the next place, no court could undertake to say what would be her damages in the , matter, as we could not see or know how much of the business she would have done, or how many debts she would have paid, had the agreement been complied with.
The probability is, from what we see, that Mr. Dortch would still have done the business, as he ^yas the active executor, as charged in the original bill. The complainant could ask nothing in; this matter, nor is there any proof to sustain the charge of a corrupt motive on the part of Dortch.
As to the validity or invalidity of the judgment obtained in Arkansas by Dortch and others, we need' *762 but say that the question has no connection with this case. Dortch is not seeking to enforce it in this State. If he should do so, then she may litigate her liability on the same. It will be a matter purely personal between the parties, but it is not connected with the administration of the estate of Aaron V. Brown, the settlement by the representatives, to adjust which the original bill was brought.
All other matters in this supplemental bill were matters fairly involved in the original bill.
Upon the whole, we have no hesitancy in holding that the Chancellor erred in overruling the demurrer. It should have been sustained, and this bill dismissed at the cost of the complainants, which we now do.
The only other matter which occurs to us in this case is, the question of the right of Mrs. Brown to have the compensation of her attorneys for services in this original bill allowed her.
AVe do not see that the question was made in the court below, but think it one that ought to be considered and settled at the termination of ibis proceeding.
She filed her bill in two capacities: as co-executrix, for an account between herself and Dortch, the executor with her; and also to assert her individual interest as devisee and legatee.
In the first aspect of the case, it was a proper bill to be filed for the benefit of all concerned, and the estate should bear the bnrden; in the other aspect of the case, the estate ought not to be charged. AVe therefore conclude that it is as nearly equitable *763 as it can be adjusted, to allow one-half of what is Reasonable compensation to the attorneys in prosecuting the original bill against the estate of A., Y. Brown: the balance must be paid by Mrs. Brown individually.
The proper reference may be made to the clerk of this court, if the matter cannot be agreed on, to carry out this decree, in order that the case may be finally settled as speedily as possible.
The costs of this • court will be paid out of the estate as to the original bill; as to the supplemental bill, the costs of this court and of the court below.